PEOPLE ex rel. HAY v. BOWE, Superintendent of Public Buildings.

(Supreme Court, Special Term, Albany County. April, 1912.)

1. OFFICERS (§ 76*)—REMOVAL—REINSTATEMENT.

The head of a state department abolished the office of paymaster, occupied by an honorably discharged fireman, and on request the Civil Service Commission, with the approval of the Governor, classified as exempt a new position of private secretary and cashier, and the appointee to this new office performed the duties formerly performed by the paymaster. *Held*, that in view of Civil Service Law (Consol. Laws 1909, c. 7) § 22, providing that the restrictions contained in that section on the power of removing employés who are honorably discharged firemen shall not apply to private secretary and cashier, the relator was not entitled to reinstatement without proof of bad faith.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 108; Dec. Dig. § 76.*]

2. EVIDENCE (§ 83*)—PRESUMPTIONS—OFFICIAL ACTS.

It will be presumed, until shown to the contrary, that the Governor and Civil Service Commission in creating a new exempt position in a state department, and in abolishing another position, the duties of which were transferred to the new, did so in the interests of the public service.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 105; Dec. Dig. § 83.*]

3. STATES (§ 46*)—APPOINTMENT TO OFFICE—CIVIL SERVICE RULES.

Where the head of a state department has properly established a position in his department in the exempt class, the fact that, in filling such position, he considers the politics of the appointee, does not render the appointment invalid.

[Ed. Note.—For other cases, see States, Cent. Dig. § 51; Dec. Dig. § 46.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. OFFICERS (§ 76\*)—CIVIL SERVICE—PREFERENCES—REINSTATEMENT.**

Under Civil Service Law (Consol. Laws 1909, c. 7) § 22, providing that if a position held by an honorably discharged volunteer fireman shall be abolished for reasons of economy, the employé shall not be discharged, but shall be transferred to another branch of the public service for which he may be fitted, receiving the same compensation, one so discharged is not entitled to reinstatement, unless there is a vacancy in a position to which he could properly be transferred.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 108; Dec. Dig. § 76.\*]

Alternative writ of mandamus by the People, on the relation of Miller Hay, against John Rowe, as Superintendent of Public Buildings, to require the defendant to reinstate the relator in the department of public buildings. Writ dismissed.

J. S. Frost, for relator.

Thomas Carmody, Atty Gen. (Irving D. Vann, Deputy Atty. Gen., of counsel), for defendant.

COCHRANE, J. On February 20, 1911, the relator, an honorably discharged volunteer fireman, and entitled as such to all the protection afforded by section 22 of the Civil Service Law, held a position designated as paymaster in the state department of public buildings. This position was classified as exempt by the State Civil Service Commission. On the date mentioned, the defendant, who had recently been appointed to the position of superintendent of public buildings, notified the relator, and also the Commission, that he had abolished the position of paymaster and requested the Commission to classify as exempt the position of private secretary and cashier, a position which had not theretofore existed. The Commission took the request under consideration and after investigation and deliberation amended its rules so as to substitute the position of private secretary and cashier in the exempt class in the place of paymaster. This amendment received the approval of the Governor on April 12, 1911, and the defendant was notified accordingly. Prior thereto the defendant, in anticipation of the action of the Civil Service Commission and of the Governor, appointed one Quinn to the new position of private secretary and cashier, and such position was held by Quinn at the time of the institution of this proceeding.

The relator contends that the position of paymaster was not abolished in good faith, but for political reasons, and that the establishment of the new position called private secretary and cashier was essentially only a change in terms characterizing the two positions, the duties whereof remained practically unchanged, and that the new position was ostensible merely and for the purpose of depriving the relator of the protection afforded him by section 22 of the Civil Service Law.

Defendant, on the other hand, contends that the new position of private secretary and cashier was established in good faith and for the more efficient administration of the department, and that when it was established the position of paymaster became unnecessary and

was abolished for reasons of economy and because its duties could just as well be distributed to persons holding other positions.

[1] I think the key to the solution of the question thus raised is the motive of the defendant in desiring a private secretary. If such position was established in good faith and for the betterment of the service as honestly viewed by the defendant, the relator has no grievance: First, because there is little difficulty in concluding from the evidence that with the establishment of the position of private secretary and cashier the former position of paymaster became unnecessary and was properly abolished in the interests of economy; and, second, because section 22 of the Civil Service Law, under which section the relator claims protection, expressly excepts from its provisions "the position of private secretary, cashier or deputy of any official or department."

[2] As bearing on the question of the propriety of the new position of private secretary and cashier, I do not think we are at liberty to overlook the action of the State Civil Service Commission and the Governor in relation thereto. Section 10 of the Civil Service Law provides that such Commission "shall from time to time make rules for the classification of the offices, places and employments in the classified service of the state * * * as after due inquiry by the Commission shall be found practicable," and that "such rules and any modifications thereof shall take effect when approved by the Governor." Such rules "have the force and effect of law." Section 6, subdivision 1, Civil Service Law. The Commission investigated and considered the propriety of classifying as exempt the position of private secretary and cashier in the department of public buildings, and after such investigation and deliberation directed, with the approval of the Governor, that such position might properly be thus classified. Such action was taken under subdivision 4, section 13 of the act, which declares that:

"There may be included in the exempt class all other subordinate offices for the filling of which competitive or noncompetitive examination may be found to be not practicable."

It must be assumed that in taking such action the Commission and Governor were actuated solely by their view of what was most in the interests of the public service. They must have determined that there existed appropriate conditions and circumstances for a position such as private secretary and cashier with such incidental features as naturally and appropriately go with that position so as to render it proper to exempt it from examination and place in the hands of the appointing officer the power to fill it unhampered by any restrictions or legal requirements, but solely upon his own judgment as to the fitness of the person whom he appointed to such position. Otherwise the Commission and the Governor would not have classified such position as exempt.

But without regard to the action of the Commission, and considering the question solely from the standpoint of the motive which actuated the superintendent of public buildings, I think the relator has failed to sustain the burden of proof of establishing by a preponder-

ance of evidence that the superintendent was actuated by bad faith. It was not unreasonable or unnatural that he should desire to have associated with him a private secretary with whom he could sustain confidential relations and to whom he could intrust some of the responsibilities of his office and delegate duties of a private or secret nature. The State Civil Service Commission, with the approval of the Governor, determined that such a position was proper. It follows also naturally and reasonably that in filling such a position the defendant would desire a man of his own selection with whom he could be on terms of congeniality and with whom he could exchange confidences and on whom he could place responsibility. Those are the distinctive and distinguishing features of a position such as that of private secretary, and, if the defendant was not actuated by improper motives in desiring such a position at his disposal and such a man to fill it, how can it be said that he acted in bad faith towards the relator, who was to him a stranger, and who does not contend that he would be the natural selection for the defendant to make? It may be true, as urged by the relator, that the physical labors of Mr. Quinn have not been much more onerous than those performed by the relator. But the controlling fact remains that the essential and important characteristics of the new position were the confidential and personal relationship and the increased responsibilities which went with it involving judgment, trust, confidence, delegated power and authority, and such other features as differentiate in a marked degree the position of private secretary from such a position as was held by the relator. I do not mean to say that the relator did not possess all those attributes, but the point is that they were not required in his old position of paymaster, while they are a very important, if not the most important, part of the duties of the private secretary.

[3] It is also true that the defendant consulted one of the political leaders of Albany in reference to the appointment of Quinn; but, if he had properly established a position in the exempt class to which he could appoint a new man, the fact that he considered the appointment partly with reference to the politics of his appointee does not necessarily condemn the appointment. It is also to be observed that the defendant knew Quinn and had had business relations with him, and that he did not appoint the man whom he had previously and without success attempted to appoint to the old position of paymaster. After careful consideration of all the evidence, I am not satisfied therefrom that the new position of private secretary was established in bad faith or for sinister purposes. The burden is on the relator to establish that fact affirmatively, and I do not think there is a preponderance of evidence in his favor.

Having reached this point in the discussion, it follows, as already stated, that the position of paymaster was properly abolished. Quinn assumed the duties of private secretary, and, in addition to such duties and relationships as peculiarly characterize that position, he took over substantially all the duties which had been performed by the relator. There was nothing left for the relator to do. His position was abolished. It is not claimed that some other position should have

been abolished, or that he has been unjustly discriminated against in that particular.

[4] Section 22 of the Civil Service Law provides as follows:

"If the position so held by any such honorably discharged soldier, sailor or marine or volunteer fireman shall become unnecessary or be abolished for reasons of economy or otherwise, the said honorably discharged soldier, sailor or marine or volunteer fireman holding the same shall not be discharged from the public service but shall be transferred to any branch of the said service for duty in such position as he may be fitted to fill receiving the same compensation therefor, and it is hereby made the duty of all persons clothed with power of appointment to make such transfer effective. * * * Nothing in this section shall be construed to apply to the position of private secretary, cashier or deputy of any official or department."

That statute describes the status of the relator and measures his rights in the premises. His position became unnecessary and was "abolished for reasons of economy or otherwise." He was not and could not be discharged for that reason. He was and probably is entitled to be transferred to any appropriate branch of the service except that of private secretary, cashier, or deputy. But he has not made it appear that there is any vacancy to which he could thus be transferred. Matter of Breckenridge, 160 N. Y. 103, 54 N. E. 670; Matter of Stutzbach, 168 N. Y. 416, 422, 61 N. E. 697; People ex rel. Chappel v. Lindenthal, 173 N. Y. 524, 66 N. E. 407. His contention is that his old position was unlawfully abolished and that he should be reinstated thereto.

For the reasons stated, I think such contention is untenable, and that this proceeding must be dismissed, with costs.